Brewster H. Jamieson, ABA No. 8411122
Hans Huggler, ABA No. 1505025
LANE POWELL LLC
1600 A Street, Suite 304
Anchorage, Alaska 99501
Telephone:   907-264-3325
                        907-264-3318
Facsimile:    907-276-2631
Email:          jamiesonb@lanepowell.com
                      hugglerh@lanepowell.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY, | |
| Plaintiff, | Case No. 3:20-cv-00145-TMB |
| v. | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| FISH OR CUT BAIT, LLC | |
| Defendants. | |

    Pursuant to Federal Rule of Civil Procedure 56(a), Plaintiff Berkshire Hathaway
Homestate Insurance Company ("Homestate") moves for summary judgment and a
declaration that it does not owe defendant/counterclaimant Fish or Cut Bait, LLC
("FOCB") indemnity for business income or perishable goods losses arising out of
municipal orders restricting the operation of restaurants in the Municipality of Anchorage
(the "Municipal orders") during the coronavirus pandemic.

    The COVID-19 outbreak has affected the public and businesses throughout the
country in unprecedented ways.  But these challenging and unfortunate circumstances do
not create insurance coverage for losses that fall outside the terms of a policyholder's
insurance contract.  FOCB claims it is covered for business income losses arising out of

municipal closure orders under its Business Income or Civil Authority coverages and that perishables which spoiled in the initial weeks of closures are covered. They are not. The Policy does not provide coverage because: (1) FOCB has not suffered any "direct physical loss of or damage to" insured property, (2) the Municipal orders were not the result of direct physical loss of or damage to *other* property, (3) the Municipal orders did not "prohibit" FOCB from accessing its insured premises, (4) its perishables were only covered if destroyed due to equipment breakdown, and (5) several exclusions apply to bar coverage.

"The overwhelming majority of courts have concluded that neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage." *Out West Rest. Grp., Inc. v. Affiliated Ins. Co.*, 2021 WL 1056627, at *4 (N.D. Cal. Mar. 19, 2021). "These decisions have reasoned that the virus fails to cause physical alteration of property because temporary loss of use of property (if any) during a pandemic and while government orders are in effect does not qualify as physical loss or damage." *Id.* FOCB's claims are identical to those rejected around the country, and Homestate is entitled to a declaration that FOCB's claimed losses are not covered by the Policy and judgment in its favor as to all claims and counterclaims.

# I. <u>BACKGROUND</u>

## A. **Claim Facts.**

On March 16, 2020, the Municipality of Anchorage prohibited indoor dining in Anchorage restaurants and bars in response to the spread of the novel coronavirus. The order applied to all restaurants and bars, except delivery and take-out operations. Anchorage "entertainment facilities" such as theaters, gyms, and bingo halls were also ordered closed. (ECF No. 8-2.) The initial March 16th order was extended several times. (ECF Nos. 8-3, 8-4.) On April 27, 2020, the Municipality issued an "easing up" order that permitted partial dine-in under certain scenarios (ECF No. 8-6), and subsequent Municipal orders restricted indoor food and beverage service to varying degrees to the present.

FOCB operates bars and restaurants under several names in downtown Anchorage. As of March 2020, FOCB was insured under a commercial lines policy issued by

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)          Page 2 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 2 of 23

Homestate, the relevant terms of which are set out in more detail below. (ECF No. 1-1 ("Policy").) On April 21, 2020, FOCB notified Homestate of a claim through its broker. FOCB asserted that:

> DESCRIPTION OF INCIDENT: A LOSS FOR, INCLUDING BUT NOT LIMITED TO, loss of product, spoilage, contamination cleanup coverage and business income and extra expense coverage related to Civil Authority to close due to contamination. There was an order issued by Anchorage Mayor Ethan Berkowitz prohibiting dine-in service for food or drink at bars, breweries and restaurants at 5pm on March 16, 2020 that instructed and prompted closure. THIS IS A DEVELOPING SITUATION AND THE INSURED RESERVES ALL RIGHTS TO AMEND, ADD TO, OR REVISE ANY INFORMATION HEREIN.

(ECF No. 8-5.) A Homestate claim specialist contacted FOCB on April 22, 2020. The claim specialist noted:

> PC from INSD, Spoke with Dylan. He stated that they have a restaurant that only does dine in service. The city and then the state restricted restaurants to only take out service due to the COVID-19 epidemic. They have been attempting to start take out service, but have been losing money trying to do so. They stated that some of the food they had ordered has spoiled because they have lost business and they could not get the food sold in time. He explained that there is no known contact with anyone at the building, and no known damage to any property. He said they have not received any report from customers or employees stating they had contracted COVID-19. He stated his claim is for the loss of business income due to the civil authority enacted by the City of Anchorage and the State of Alaska. I explained that we will review the claim for coverage. Also explained that we may have coverage issue due to no physical damage to the property that caused the interruption. I told him I would sen[d] ROR to explain in greater detail.

(Declaration of Scott Rindone, Ex. 7 (claim notes).)

On April 27, 2020, Homestate sent a Reservation of Rights letter to FOCB. (ECF No. 8-7.) Homestate set out its understanding of the facts of the claim as:

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)          Page 3 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 3 of 23

You have reported that as a result of the Coronavirus (COVID- 19) outbreak you, along with many other businesses, were mandated by your local government to shut down your business until further notice. As a result of this shutdown, you are making a claim for loss of Business Income.

You have indicated that your business is a restaurant and that you have been mandated to shut down your dine-in service. You indicated the mandate would allow you to do a takeout service, a service you did not offer prior to the shutdown. You have since begun to offer takeout, but you said you have not been able to make a profit doing so. We understand that because of the shutdown, some of your food product has spoiled because you were unable to sell it in time. You reported there was no known physical damage or contamination to your property.

As there is no claim being made for damage to your Building, and as you have confirmed there is no physical damage to your property, there does not appear to be anything to inspect. We are, however, reviewing this claim based on the information you have presented to us. While this process is still on-going, based on the material facts and circumstances related to this claim as reported to us, the coverage afforded by this policy may be limited.

(ECF No. 8-7 at 1-2.) Homestate identified Policy terms that might exclude coverage for FOCB's claimed loss, concluding that "[i]n the event you have additional facts or information you contend support a contrary conclusion, or in the event new facts or information regarding the Claim becomes available, please provide such facts or information to us immediately and we will consider them as quickly as possible." (*Id.* at 6.)

FOCB responded on May 4, 2020. (ECF No. 8-8.) It asserted that "the underlying cause of our closure is Covid-19," that "Covid-19 physically infects and stays on surfaces, objects and materials," and that despite it being "transitory in nature" the virus causes "physical damage." FOCB asserted that "[i]t is the loss of our property's essential functionality due to the presence of the virus in and on the insured property that constitutes our direct physical loss or damage." FOCB did not provide any specific information to

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)     Page 4 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 4 of 23

support its assertion that coronavirus was "present" on its property. In response, Homestate sent FOCB a revised Reservation of Rights letter on May 8, 2020, which stated:

> In your letter dated May 4, 2020, you indicated you believe COVID-19 has physically infected your property. Please provide us any evidence or documentation you have related to the presence of the virus on your property, including any invoices related to the decontamination of your property, for us to review. If our understanding of the facts is in any way incorrect, please notify us immediately.

(ECF No. 8-9 at 2.) FOCB did not respond.

On June 19, 2020, six weeks after responding to FOCB, Homestate notified FOCB by letter that it had denied the claim. (Compl. Ex. D.) Homestate concluded that based on the information provided to it, FOCB had not suffered "direct physical loss of or damage to" its property, nor had the Municipality's orders stemmed from direct physical loss or damage to *other* properties as required to trigger the Civil Authority coverage. Homestate also identified various exclusions that would likewise preclude coverage. Anticipating that FOCB would dispute that determination, Homestate filed this declaratory action, notifying FOCB the action would be dismissed if FOCB was not further pursuing the claim. (Declaration of Hans N. Huggler ("Huggler Decl.") Ex. 1 (cover letter to lawsuit).)

After Homestate agreed to a liberal extension of time to respond, FOCB filed its Answer and Counterclaim on October 16, 2020, asserting claims for coverage and insurance bad faith. (*See* ECF No. 6 (order extending answer deadline); ECF No. 8 (Answer and Counterclaim).) Therein, FOCB stated for the first time that on June 29, 2020, (ten days after Homestate's coverage decision), FOCB "was informed by the Anchorage Health Department that at least two patrons who were infectious spent time in [FOCB]'s establishment on June 20 and June 21, 2020." (Counterclaim at ¶ 20.[1]) FOCB attached a letter from the Municipality advising FOCB of best practices to prevent spread on its premises. (ECF No. 8-10.) The Municipality did not instruct FOCB to halt

---

[1] FOCB numbered its Answer paragraphs and Counterclaim paragraphs separately.

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)        Page 5 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 5 of 23

operations, and "as a courtesy" referred FOCB to the "MOA Phase 3 Operating Requirements" that permitted indoor dining under restrictions applicable to all Anchorage establishments. (ECF No. 8-10; Huggler Decl., Ex. 2 (MOA Phase 3 Restrictions).) FOCB alleged an additional potential exposure occurred on June 25, 2020, relying on public reporting. (Counterclaim at ¶ 21, ECF No. 8-11.)

**B.    Relevant Policy Terms.[2]**

FOCB claims Business Income losses under two Policy provisions. The first is primary Business or Rental Income coverage. The Policy provides:

> **A. Coverage.**
>
> We will pay for the actual loss of Business or Rental Income you sustain due to the necessary ""suspension"" of your ""operations"" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to Covered Property under this policy at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(ECF No. 1-1 ("Policy") at 103.) The "period of restoration begins 72 hours after the time of direct physical loss or damage for Business or Rental Income coverage" or "[i]mmediately after the time of direct physical loss or damage for Extra Expense coverage." (Policy at 31.)

The second coverage at issue is "Civil Authority" coverage, where the Policy provides:

> **b. Civil Authority.**
>
> We will pay for the actual loss of Business or Rental Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to

---

[2] Homestate's reliance on particular Policy provisions in this motion does not waive its right to rely on any other provision of the Policy.

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)     Page 6 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 6 of 23

property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(Policy at 104.)

Under either provision, coverage requires the occurrence of "direct physical loss of or damage to property" caused by or resulting from a "Covered Cause of Loss." The Policy excludes certain causes of loss from that definition. It provides:

### B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of any ordinance or law:

   **(1)** Regulating the construction, use or repair of any property; or

   **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

   **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   * * *

   **c. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

   * * *

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)     Page 7 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 7 of 23

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

**b.** Delay, loss of use or loss of market.

\* \* \*

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\* \* \*

> **b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

(Policy at 32-35.)

FOCB also asserts it is entitled to coverage for food that spoiled in the aftermath of the March 2020 public health orders. (ECF No. 8-5; Counterclaim at ¶ 35.) The Policy provides coverage for "Business Personal Property," which it defines to include eight categories of personal property "unless otherwise specified in the Declarations." Here, the Declarations show that FOCB purchased three property coverages: "Business Personal Property other than Stock & TIB (INDOOR RESTAURANT EQUIPMENT)," "Business Personal Property other than Stock & TIB (OUTDOOR FURNITURE)," and "Tenants Improvement and Betterments." (Policy at 8.) FOCB did not purchase coverage for "stock," defined as "merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping." (Policy at 24.)

## II.  LEGAL STANDARD

### A.  Summary Judgment Standard.

A court must grant summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden of showing no genuine issue of material fact exists lies with the moving party. *Celotex Corp. v. Catrett, Inc.*, 477 U.S. 317, 322-23 (1986). Where it does not have the

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)      Page 8 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 8 of 23

burden of proof, the moving party need only show the absence of evidence to support the non-moving party's case. *Id.* at 325.

A non-moving party must set forth specific facts demonstrating the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)). A "non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Arguments based on conjecture or speculation are insufficient." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (internal citations and changes omitted).

**B.      Interpretation of Insurance Policies Under Alaska Law.**

The interpretation of insurance provisions is a question of law in which courts look to "the language of the disputed provisions, other provisions in the policy, extrinsic evidence, and case law interpreting similar provisions." *United Servs. Auto. Ass'n v. Neary*, 307 P.3d 907, 910 (Alaska 2013).

> Insurance policies are construed ... to honor a lay insured's reasonable expectations. Policy language is construed in accordance with ordinary and customary usage. Ambiguities in ... insurance policies are to be construed most favorably to an insured, but ambiguities only exist when there are two or more reasonable interpretations of particular policy language.

*Ball v. Allstate Ins. Co.*, 426 P.3d 862, 865 (Alaska 2018) (quoting *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008).) Ultimately, "[t]he obligations of insurers are generally determined by the terms of their policies." *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1294 (Alaska 1994). Where an insurer "limits the coverage of a policy issued by it in plain language, [Alaska courts] recognize[] the restriction." *Ins. Co. of N. America v. State Farm Mut. Auto. Ins. Co.*, 663 P.2d 953, 955 (Alaska 1983).

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)      Page 9 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 9 of 23

# III. <u>ARGUMENT</u>

**A.     FOCB Has Not Suffered "Direct Physical Loss of or Damage to" Covered Property and its Business Income Coverage has not been Triggered.**

FOCB purchased coverage for "actual loss of Business or Rental Income [it] sustain[ed] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration.'" (Policy at 103.)  That coverage requires FOCB's losses be "caused by direct physical loss of or damage to Covered Property."  (*Id.*)

FOCB alleges that "[t]he presence of COVID-19 renders physical property unsafe and unusable," (Counterclaim at ¶ 26), but even proof of coronavirus exposure at FOCB's property does not trigger coverage because *tangible* physical loss or damage is required. "Direct physical loss of or damage to" is undefined in the Policy, and the Court must construe its meaning in accordance with ordinary and customary usage, using dictionaries to aid in its interpretation.  *Ball v. Allstate Ins. Co.*, 426 P.3d 862, 866 (Alaska 2018).  But the Court need not engage in a novel interpretive exercise because the direct physical loss or damage requirement is a common one and courts hold it requires "damage to tangible, material objects."  *Patel v. Am. Economy Ins. Co.*, Case No. 12-cv-04719-WHO, 2014 WL 1862211, at *5 (N.D. Cal. May 8, 2014) (citing the Oxford English Dictionary and Merriam Webster's and collecting cases); *see generally Handbook on Insurance Coverage Disputes*, Ostrager & Newman § 21.02 (19th Ed. 2018) ("The direct physical loss requirement operates to exclude coverage for intangible and economic losses suffered by the insured.")

Courts across the country have rejected FOCB's "direct physical loss" argument on coronavirus exposure claims.  As one put it, "[t]he critical policy language here—'direct physical loss'—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage.  The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself."  *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020).  On point is the decision in *Uncork and Create LLC v. Cincinnati Insurance Co.*, 2020 WL 6436948, at *4 (S.D. W.Va. Nov. 2, 2020), which held:

The Court finds those decisions concluding that COVID-19 does not cause a direct physical damage or loss to property to be more persuasive. Although some courts have drawn a distinction based on whether a complaint alleged presence of the virus on the premises, the Court does not find such an allegation determinative. Firstly, while factual allegations drive the analysis of a motion to dismiss, courts are not required to set aside common sense, and neither *Studio 417*, which relied in part on the allegation of presence of the virus, nor the instant case, involve actual allegations of employees or patrons with infections traced to the business. There is a similar risk of exposure to the virus in any public setting, regardless of artful pleading as to the likelihood of the presence of the virus. Secondly, even when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered "loss" is required to invoke the additional coverage for loss of business income under the Policy.

The tangible physical damage requirement is highlighted by the related provisions detailing the "period of restoration" relevant to Business Income coverage. *Neary*, 307 P.3d at 910 (courts look to "other provisions in the policy" to interpret disputed provisions). The "period of restoration" applicable to Business Income coverage begins soon after "the time of direct physical loss or damage" and ends when damaged property is "*repaired*, *rebuilt*, or *replaced* with reasonable speed or similar quality." (Policy at 31 (emphasis added).) Each of these terms assume tangible, physical damage to property. *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.,* No. 20-CV-04783-SK, 2021 WL 141180, at *4-5 (N.D. Cal. Jan. 13, 2021) (noting "the words '[r]ebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature" and holding that coverage without the need for physical repairs would render the "period of restoration" meaningless) (quoting *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280,

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)     Page 11 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 11 of 23

287 (S.D.N.Y. 2005)). It would be nonsensical for non-physically damaging viral exposure to trigger coverage where the remediation of that contamination through cleaning would not constitute repair, rebuilding, or replacement and would not end the "period of restoration."[3]

That there is no coverage here is consistent with decisions around the country on the tangible loss issue, and not just in the coronavirus context. In *Mama Jo's, Inc. v. Sparta Insurance Co.* the Southern District of Florida granted summary judgment against a restaurant seeking coverage for lost income and cleaning costs arising from nearby road construction. No. 17-CV-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018). It held that "cleaning is not considered direct physical loss" and that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" The Eleventh Circuit affirmed, holding that under Florida law "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical'" and citing authority from the Sixth Circuit, California, and Georgia. *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 Fed. Appx. 868, 879 (11th Cir. 2020).

Because of the tangible loss requirement and the transient nature of viral contamination, "the overwhelming majority of courts have concluded that neither COVID-19 nor the governmental orders associated with it cause or constitute property loss

---

[3] This conclusion is further supported by the Policy's 72-hour waiting periods—transient viral exposure to surfaces can and should be resolved by cleaning, not repairs or rebuilding requiring longer closures and insurance coverage. (Policy at 31 (defining period of restoration); *id.* at 26 (applying same period to interruption coverage from Civil Authority closures).) *See generally* Cleaning and Disinfecting Your Facility, *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/disinfecting-building-facility.html (last accessed April 28, 2021). FOCB's social media posts after reported exposures show it continued operating without an interruption for cleaning. (Huggler Decl., Ex. 3 (social media posts by Williwaw Social promoting its COVID-19 mitigation precautions).)

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)    Page 12 of 23

Case 3:20-cv-00145-TMB    Document 14    Filed 04/30/21    Page 12 of 23

or damage for purposes of insurance coverage." *Out West Rest. Grp., Inc. v. Affiliated Ins. Co.*, 2021 WL 1056627, at \*4 (N.D. Cal. Mar. 19, 2021); *see, e.g.*, *Sas Int'l, Ltd. v. Gen. Star Indem. Co.*, No. CV 20-11864-RGS, 2021 WL 664043, at \*2 (D. Mass. Feb. 19, 2021) ("these terms require some enduring impact to the actual integrity of the property at issue. In other words, the phrase 'direct physical loss of or damage to' does not encompass transient phenomena of no lasting effect"); *Wellness Eatery La Jolla LLC v. Hanover Insurance Group*, No. 20cv1277-AJB-RBB, 2021 WL 389215, at \*7 (S.D. Cal., February 3, 2021) ("the Court does not find that the presence of COVID-19 qualifies as physical damage to property because the virus harms human beings, not property"); *Mena Catering Inc. v. Scottsdale Ins. Co.*, No. 1:20-cv-23661-BLOOM/Louis, 2021 WL 86777 (S.D. Fla. Jan. 11, 2021) (citing *Mama Jo's* in holding "[t]here is no 'direct physical loss' where the alleged harm consists of the mere presence of the virus on the physical structure of the premises"); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, Case No. 1:20-CV-665-RP, 2021 WL 972878, at \*8 (W.D. Tex. Jan. 21, 2021) ("Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant."). Here, there is no evidence that COVID-19 exposure has tangibly damaged or caused the permanent loss of insured property. There is therefore no coverage.

This case is different from non-COVID-19 cases where contamination renders a structure temporarily unsafe for occupancy until physically remediated. *See, e.g.*, *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934 at \*3 (D.N.J. 2014) (ammonia fumes); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) (airborne asbestos fibers); *Farmers Ins. Co. of Or. v. Trutanich*, 858 P.2d 1332, 1335 (Or. Ct. App. 1993) (pervasive methamphetamine odors). Here, FOCB continued to utilize its premises, undermining any claim the premises were even temporarily unsuited for human occupancy as occurred in the "noxious fumes" cases.

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)      Page 13 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 13 of 23

FOCB's premises were not physically contaminated such that customers could not safely enter, rather, FOCB's customers could or would not congregate with others in restaurants generally by dint of Municipal orders and their own virus precautions. Those facts do not constitute a "direct physical loss of" FOCB's property. *Barbizon School of S.F., Inc. v. Sentinel Inc. Co. Ltd.*, No. 20-CV-08578-TSH, 2021 WL 1222161, at *7 (N.D. Cal. Mar. 31, 2021) (under California law "a detrimental economic impact, such as limited use of property, unaccompanied by a distinct, demonstrable, physical alteration of the property, is insufficient to claim a direct physical loss" (internal quotation marks omitted)); *Torgerson Properties, Inc. v. Cont'l Cas. Co.*, No. CV 20-2184 (PAM/KMM), 2021 WL 615416, at *2 (D. Minn. Feb. 17, 2021) ("it is not the presence of the virus on the premises that closed TPI's properties (or caused people to stop visiting those properties), but rather the executive orders meant to slow the virus's spread.").

FOCB has never provided Homestate with any evidence of physical damage to its property despite Homestate's explicit request. (ECF No. 8-9 at 2.) On the contrary, on May 4, 2020, FOCB asserted that "[i]t is the loss of our property's essential functionality due to the presence of the virus in and on the insured property that constitutes our direct physical loss or damage." (ECF No. 8-8.) When Homestate requested further information regarding known contamination and *specifically* requested any information on costs of decontamination, FOCB was silent, presumably because there was no contamination and it had not engaged in any decontamination. Based on its pleadings, it appears FOCB had no knowledge of a potential coronavirus exposure on its property until *after* Homestate made its coverage determination and *after* this suit was filed. Even then, FOCB did not make additional claims based on these or any subsequent exposures.[4] And while FOCB alleges "cleaning and sanitizing of the premises during the period of restoration," this careful wording avoids that FOCB appears to have continued to operate, highlighting to the public its COVID-19 safety precautions without mention of any need to suspend

---

[4] FOCB remains an insured of Homestate at the time of this filing.

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)     Page 14 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 14 of 23

operations for cleaning or decontamination. (Huggler Decl., Ex. 3 (social media posts by Williwaw Social promoting its COVID-19 mitigation precautions).) FOCB did not treat its own property as "damaged," "lost," or "unsafe and unusable," underscoring that any *actual* presence of coronavirus on its property was incidental to the closure orders at the heart of this case. *See Another Planet Ent., LLC v. Vigilant Ins. Co.*, No. 20-CV-07476-VC, 2021 WL 774141, at *1 (N.D. Cal. Feb. 25, 2021) ("Another Planet's facilities did not shut down because of the virus's presence on facility surfaces. Rather, those facilities shut in response to the closure orders, which would have required them to remain closed even if Another Planet could have proven to a certainty that the virus was *not* present at its facilities."). FOCB has not suffered "direct physical loss of or damage to" its insured property, as a result there is no coverage on these claims, and the Court should grant summary judgment to FOCB on that basis.

Finally, FOCB's allegations are identical to those in *Studio 417*, in which the Western District of Missouri held allegations that the virus was "present . . . in viral fluid particles" and "deposited on surfaces or objects" sufficient to bar dismissal for failure to state a claim for coverage under the policy there at issue. *Compare Studio 417, Cincinnati Ins.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *6 (W.D. Mo. Aug. 12, 2020), *with* Counterclaim ¶¶ 24-26. But *Studio 417* is a clear outlier decision. *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, No. 2:20-CV-862, 2021 WL 147139, at *6 (W.D. Pa. Jan. 15, 2021) ("the growing body of case law rejects the contrived definition of 'direct physical loss of or damage to' that would provide coverage for economic losses unrelated to physical impact to the covered structure"). It was decided under different coverage language ("accidental loss or accidental physical damage"), and the *Studio 417* court emphasized its obligation to accept allegations in the pleadings despite the well-reported judicial finding that "[i]t damages lungs. It doesn't damage printing presses." *Id.* at *6 ("This is enough to survive a motion to dismiss."). Here, FOCB's coverage requires tangible physical loss of or damage to property and allegations won't do—to survive summary judgment, FOCB must present evidence of virus-caused damage on which a jury

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)     Page 15 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 15 of 23

could find in its favor.  It cannot, and the Court should enter summary judgment for Homestate.

**B.    The Municipality's Orders Were Not "Caused by" Loss or Damage to Other Property and Access to FOCB's Covered Property is not "Prohibited," so Civil Authority Coverage has not Triggered.**

Along with the primary Business Income coverage, the Policy covered business income losses "caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises."  (Policy at 104.)  Neither of those conditions are met here.

As to property damage, for the reasons already set out, that damage must be physical and tangible.  The Municipality's Orders of March 16, 2020 were not "caused by" any tangible damage to property.   While EO-1 (which first restricted FOCB's operations) referred to the Mayor's general authority to issue emergency orders to preserve "life and property" (Anc. Mun. Code § 3.80.060H), the accompanying EO-2 was issued pursuant to powers reserved for "a state of public health emergency."  (Huggler Decl., Ex. 4 (EO 2); Anc. Mun. Code § 3.80.065.)  And in EO-6, which extended EO-1, the Municipality made clear its *public health* purpose:

> **Purpose**: The emergency measures taken to date have flattened the curve and slowed the spread of COVID-19 in Anchorage.  But the emergency threat to the health and welfare of the people of this community remains and the economic pain suffered to date may prove to be in vain if the municipality were to lift the emergency orders too soon.  We are planning for the loosening of the hunker down order and gradual reopening of businesses.  Business reopening will occur in two ways: allowing non-critical businesses to have limited opening to the public by, for example, switching to curbside or delivery models, and allowing critical businesses to increase their public contact under updated physical distancing guidelines.

> The markers we will be looking for regarding when to loosen the requirement to hunker down include: (1) an $R_0$ (reproduction rate of the virus) approaching 1.0 which will be demonstrated by a declining rate of new positive cases in the community; (2) increased capacity for testing for COVID-19

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)      Page 16 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 16 of 23

> infection; (3) increased capacity for contact tracing positive
> cases; and, (4) sufficient medical capacity to provide treatment
> and care to patients, including having sufficient personal
> protective equipment.

(Huggler Decl., Ex. 5 (EO 6).)  The Municipality did not explicitly or impliedly issue its orders in response to tangible property damage caused by COVID-19, because viruses do not cause property damage.  Nor can FOCB prove tangible damage to other property "caused" by the Municipality's orders, as a series of courts have held when examining the orders of their jurisdictions.  *See, e.g.*, *Seifert v. IMT Ins. Co.*, No. CV 20-1102 (JRT/DTS), 2020 WL 6120002, at *4 (D. Minn. Oct. 16, 2020) (granting motion to dismiss civil authority coverage claim because plaintiff "does not plead any facts demonstrating that the coronavirus contaminated properties neighboring his businesses, or that a civil authority then prohibited him from entering his insured properties because of any such contamination"); *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020) (an Executive Order that prompted closure of a restaurant's dining room "merely recognized an existing threat" and "did not represent an external event that changed the insured property").

Further, FOCB has never been prohibited from accessing the insured property and has continued to operate within the restrictions imposed by the Municipality since March 2020 (including periods of take-out only and varying levels of dine-in capacity).  The Policy requires an order that "prohibits" access to the premises, and a *restriction* on access does not suffice.  (Policy at 104); *see Mayssami Diamond, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 320CV01230AJBRBB, 2021 WL 1226447, at *3-4 (S.D. Cal. Mar. 30, 2021) (holding no Civil Authority coverage because "[n]o facts in the Complaint demonstrate that Plaintiff was actually prohibited from accessing the premises," "[t]he text of the Closure Orders makes clear that they were issued as general precautionary measures 'to control the spread of the virus'"); *Raymond H. Namad DDS PA v. Hartford Cas. Ins. Co.*, Case No. 1:20-cv-22833-BLOOM/Louis, 2020 WL 6392841, at *7 (S.D. Fla. 2020) ("Merely restricting access to Plaintiffs' dental practice for essential medical services does

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)      Page 17 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 17 of 23

not trigger coverage under the Policy's Civil Authority provision"); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *3- (M.D. Pa. July 6, 2010) ("When the action of a civil authority completely shuts down access to a party's premises, federal courts have held that the coverage in insurance policies similar to the one at bar are triggered. However, where the action of a civil authority merely hinders access to the covered premises, without completely prohibiting access, federal courts have held that such action is not covered under policies like the one in the instant case.").

The coronavirus pandemic has forced federal, state, and local officials to make wrenching public health decisions with harsh economic consequences. Homestate does not dispute that FOCB's business operations may have been disrupted by the Municipality's orders. But FOCB contracted for coverage defined by the terms of the Policy. FOCB did not suffer tangible, physical losses of or damage to property as a result of coronavirus. The Municipality's orders were not "caused by" tangible damage to other property nor prohibited access to the insured premises. That is enough to resolve all of the claims in this suit by summary judgment. The Court's analysis should mirror that in *Uncork*, which held:

> COVID-19 poses a serious risk to people gathered in proximity to one another, and the governmental orders closing certain businesses were designed to ameliorate that risk. Property, including the physical location of Uncork and Create, is not physically damaged or rendered unusable or uninhabitable. If people could safely congregate anywhere without risk of infection, the Plaintiff has alleged no facts to suggest any impediment to Uncork and Create's operation. No repairs or remediation to the premises are necessary for its safe occupation in the event the virus is controlled and no longer poses a threat. In short, the pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses. The Court is not unsympathetic to the situation facing the Plaintiff and other businesses. But the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property damage.

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)       Page 18 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 18 of 23

*Uncork*, 2020 WL 6436948, at *4-5. The Court should likewise grant Homestate's motion for summary judgment.

**C.     FOCB Properly Concedes that the Municipality's Orders Cannot Themselves be Covered Causes of Loss.**

FOCB alleges—and Homestate admits—that "[t]he Emergency Orders issued by the Mayor of the Municipality of Anchorage were acts or decisions of a person, group, organization or governmental body."   (Counterclaim ¶ 38; ECF No. 10 (Answer to Counterclaim) ¶ 26.)  Accordingly, the Orders standing alone are not a Covered Cause of Loss. (Policy at 35 ("We will not pay for loss or damage caused by or resulting from" such acts or decisions).)  Nor can FOCB rely on any argument that the Municipality "seized" its insured property to find coverage.  (Policy at 32 (excluding "seizure . . . of property by order of governmental authority.")   To the extent FOCB relies on such assertions, any claimed losses (both business income and perished stock) are excluded.[5] *FlorExpo LLC v. Travelers Prop. Cas. Co. of Am.*, No. 20-CV-1024 JLS (DEB), 2021 WL 857004, at *4-6 (S.D. Cal. Mar. 8, 2021) (applying Acts or Decisions Exclusion to exclude coverage for coronavirus orders-related loss of cut flower stock).

**D.     FOCB's Loss of Customers Due to Changed Consumer Behavior and Municipal Orders Are a "Loss of Market" and Excluded.**

The Policy excludes claims resulting from "loss of market."   (Policy at 34.) "[M]arket refers collectively to matters external to any particular product item, namely those conditions that determine the degree to which supply of that commodity exceeds or falls short of demand . . . Thus, . . .  a market is lost when, for example, due to delay in distribution, changes in consumer habits, etc., a certain type of product is no longer in demand with its intended purchasers." *Boyd Motors, Inc. v. Employers Ins. Of Wausau*, 880 F.2d 270, 273 (10th Cir. 1989).  Here, the coronavirus pandemic drastically changed

---

[5] Any losses caused by enforcement of the Municipality's Orders would likewise be excluded.  (Policy at 32 (excluding from coverage "loss or damages caused directly or indirectly by . . . enforcement of any ordinance of law . . . regulating the construction, use, or repair of any property").)

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)     Page 19 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 19 of 23

consumer behavior as individuals avoided congregating to prevent spread and adhered to public health guidelines. To the extent FOCB's claimed losses are the result of consumers choosing not to eat at restaurants during the pandemic, its losses are excluded and Homestate is entitled to a declaration that such losses are not covered.

## E.      FOCB's Spoilage Losses Are Not Covered.

FOCB claimed and here alleges that it suffered spoiled food left unsold due to the suspension of indoor dining. (*See, e.g.*, Counterclaim ¶ 3.) FOCB did not insure its perishables for spoilage except in narrow circumstances. FOCB's Building and Property coverage covers "Business Personal Property," which includes "stock" *unless* "otherwise specified in the Declarations." (Policy at 10; *id.* at 24 (defining "stock" as "merchandise held in storage or for sale, raw materials and in-process or finished goods"). The Commercial Property Declaration page shows FOCB paid premiums for three property insurance coverage components, comprising coverage for indoor and outdoor property "*other than* stock" and "[Tenant Building Improvements]" and separate Tenant Building Improvement coverage. (Policy at 8.)

FOCB purchased coverage for the spoilage of "perishable goods" in the event of an "equipment breakdown." (Policy at 136; *id.* at 140 (defining "perishable goods" as "personal property maintained under controlled conditions for its preservation and susceptible to loss or damage if the controlled conditions change").) Beyond that, FOCB's perishable goods were not covered by FOCB's Business Personal Property Coverage. Likewise, FOCB's spoilage claim is not covered by its "Extra Expense" coverage because of the lack of "direct physical loss" triggering that coverage. (Policy at 25.) And FOCB's fundamental claim, that Municipal orders delayed FOCB's sales of perishables and resulted in their loss by spoilage, is excluded as a loss arising from "delay" and by FOCB's admission that the Orders themselves are not a covered Cause of Loss. (Policy at 34; *supra* at III.C.) For these reasons, Homestate is entitled to a declaration that it does not owe coverage on these claimed losses.

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)      Page 20 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 20 of 23

**F.    Homestate is Entitled to Summary Judgment on FOCB's Counterclaims.**

FOCB filed a "Counterclaim for Declaratory Relief" that asserts causes of action for breach of contract and breach of the duty of good faith and fair dealing.  As to the breach of contract claim, Homestate's entitlement to a declaratory judgment on coverage necessarily resolves the question of Homestate's breach of its terms, and FOCB's breach claim should be dismissed with prejudice.

As to its claim for bad faith, although Alaska courts "have declined to define the elements of the tort of bad faith in an insurance contract, [Alaska] precedent makes clear that the element of breach at least requires the insured to show that the insurer's actions were objectively unreasonable under the circumstances." *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 698 (Alaska 2014).  FOCB asserts Homestate violated its duty of good faith in two particulars: (1) failure to "conduct a reasonable and prompt investigation into the circumstances of [FOCB's] losses" and (2) failure to "notify its insured of its coverage investigation prior to reserving its rights to decline coverage."  (Counterclaim ¶¶ 45, 47.)  Homestate's claims specialist contacted FOCB to discuss its claim the day after Homestate received the claim.  (ECF No. 8-5 (notice of claim on April 21, 2020); ECF No. 8-6 (notes from adjustor call).)  Homestate sent its Reservation of Rights letter on April 27, 2020, responded to FOCB's response on May 8, 2020, and waited fruitlessly for more than a month for further information before denying the claim on June 19, 2020.  Homestate's actions were not "objectively unreasonable" and the Court should grant summary judgment to Homestate on that basis.

As to the second grievance, Homestate is aware of no duty in contract, statute, or common law that it must notify its insured that it was investigating a claim prior to issuing a reservation of rights.  FOCB's issue appears to be that Homestate notified it of potential coverage problems *too soon*, a funhouse mirror reflection of Alaska law requiring insurers to provide "prompt and adequate notice" of potential coverage disputes. *Lloyd's & Inst. of London Underwriting Companies v. Fulton*, 2 P.3d 1199, 1204 (Alaska 2000).  The *Lloyd's* court approvingly quoted a passage from *Insurance Claims and Disputes* which states:

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)      Page 21 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 21 of 23

> Once the insurer has a reason to believe . . . that there are coverage issues, it should not continue to obtain information from the insured that the insured is not obligated to provide pursuant to his or her duty to cooperate without first notifying the insured of the potential coverage problems. Until such notice has been given, the insured will be neither obligated nor in a position to look after his or her own interests. . . . [T]o allow the insurer to attempt to obtain information from the insured in order to bolster an undisclosed policy defense would, in effect, allow the company to take advantage of its fiduciary relationship with the insured in order to strengthen its position against the insured.

*Id.* at 1205 (quoting 1 Allan D. Windt, Insurance Claims and Disputes, § 2.06, at 39 (3d ed.1995). It cannot be Alaska law that Homestate can be liable for bad faith both for issuing a reservation of rights letter too early *and* too late, leaving it an undefined Goldilocks period in which to notify its insured of potential coverage defenses and issues. And FOCB cannot explain what Homestate could be doing other than "investigating" after it gave notice of claim and was interviewed by a claim specialist, nor why the timing of the reservation of rights makes any practical difference. These flaws are fatal to FOCB's bad faith claim, even if the Court were to find FOCB's claims are entitled to some coverage. *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1325 (Alaska 1993) (trial court should grant summary judgment as to "reasonableness" of insurer conduct if no material dispute of fact and "the challenged conduct must be characterized in one way"). There is no evidence on which a jury could find Homestate's conduct here unreasonable, and Homestate is entitled to summary judgment on those claims.

## IV. CONCLUSION

The Policy insures against specific risks, all of which require "direct physical loss of or damage to" property. No such loss or damage has occurred here, and even if it had, FOCB's claims would be excluded from coverage. For these reasons, the Court should grant summary judgment to Homestate as to its declaratory claim and FOCB's counterclaims.

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)     Page 22 of 23

Case 3:20-cv-00145-TMB   Document 14   Filed 04/30/21   Page 22 of 23

DATED this 30th day of April, 2021.

I certify that on April 30, 2021, a copy of
the foregoing was served by email on:

Douglas G. Johnson, Johnson Beard & Trueb, PC
330 L St., Anchorage, AK 99501
djohnson@jbtattorneys.com

s/ Hans N. Huggler

LANE POWELL LLC
Attorneys for Plaintiff

By  s/ Hans N. Huggler
    Brewster H. Jamieson, ABA No. 8411122
    Hans Huggler, ABA No. 1505025

Plaintiff's Motion for Summary Judgment
*Berkshire Hathaway Homestate Ins. Co v. Fish or Cut Bait, LLC* (Case No. 3:20-cv-00145-TMB)      Page 23 of 23

Case 3:20-cv-00145-TMB  Document 14  Filed 04/30/21  Page 23 of 23